UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOSEPH A. NELSON, | CASE NO. 3:24-cv-05548-DGE |
| Plaintiff, | |
| v. | ORDER ON MOTION FOR JUDGMENT ON THE PLEADINGS (DKT. NO. 25) |
| THURSTON COUNTY et al., | |
| Defendant. | |

## I    INTRODUCTION

This matter comes before the Court on Defendants' motion for judgment on the pleadings.  (Dkt. No. 25.)  For the foregoing reasons, the motion is GRANTED.

## II    BACKGROUND

Plaintiff's decedent, Joel A. Nelson, was shot and killed by Thurston County Deputy Sheriff Rodney Ditrich on January 5, 2016.  (Dkt. No. 1 at 1–2.)  Litigation ensued, and a civil rights action (hereinafter, "underlying lawsuit") proceeded to trial in this Court in 2023.  *See Nelson v. Thurston County et al.*, 3:18-cv-05184.  In the instant litigation, Plaintiff asserts that

Defendants violated Plaintiff's constitutional right to meaningful access to the courts by destroying evidence that would have been "highly probative and material" at trial in the underlying lawsuit.  (Dkt. No. 1 at 34.)

### A.  The Underlying Lawsuit

On January 5, 2016, Ditrich was out on patrol and caught sight of Nelson "acting weird." (Dkt. No. 1 at 6.)  Ditrich detained Nelson on suspicion of trespassing on private property.  (*Id.*) He ordered Nelson to put his hands on the hood of the police cruiser and asked him for his name. Nelson placed his hands on the vehicle and provided false identity information, stating that his name was Joshua Nelson.  (*Id.*)  Ditrich subsequently informed Nelson that he was under arrest and to get down on his knees.  (*Id.* at 9; Dkt. No. 26-5 at 4.)  An altercation ensued, and Nelson managed to enter Ditrich's police cruiser.  (Dkt. No. 26-5 at 4.)  Ditrich killed Nelson as he was attempting to flee in the vehicle.  (Dkt. No. 26-3 at 5.)  The Sheriff of Thurston County, Sherriff Sanza, was not on the scene when Ditrich killed Nelson, but he was in control of the scene during the subsequent investigation and authorized the disposal of the vehicle in which Nelson was shot.  (*Id.* at 2.)

On March 9, 2018, Joseph Nelson brought suit in this Court alleging negligence, false arrest, wrongful death, violations of Nelson's Fourth and Fourteenth Amendment rights to be free from unreasonable seizures and the excessive use of force, and violations of Nelson's right of access to the courts.  (*Id.* at 2–3) (*see also Nelson v. Thurston County et al.*, 3:18-cv-05184). During the discovery phase of the underlying lawsuit, Nelson moved for spoliation sanctions against the defendants, claiming that "the physical evidence in and on the patrol vehicle was

1    promptly destroyed and completely removed from the vehicle." (Dkt. No. 26-5 at 4.)[1] The

2    allegation that the defendants' destroyed valuable evidence also underpinned Nelson's claim that

3    the defendants violated his constitutional right to access the courts. (Dkt. No. 26-3 at 2.) As the

4    Court later described, "[t]he unadulterated interior of Deputy Ditrich's vehicle would likely have

5    provided evidence regarding impacts, blood-spatter patterns, and the relative location of the two

6    men during the incident," and "cleaning and repairs [to the outside of the vehicle] prevented any

7    testing for firearm residue and permanently destroyed any blood or other evidence of physical

8    impacts to the hood." (*Id*. at 8–9.)

9           In its order on summary judgment, the Court concluded that a genuine dispute of material

10   fact remained regarding when and where Deputy Ditrich first discharged his weapon. (*Id*. at 6.)

11   The plaintiff argued that Nelson was first shot while kneeling (or attempting to kneel) *in front* of

12   the police vehicle and that Ditrich discharged his weapon again three more times after Nelson

13   entered the vehicle and attempted to escape. (*Id*. at 6.) Ditrich maintained that he fired only

14   *after* Nelson commandeered the patrol car. (*Id*.) Because Nelson's excessive force claim turned,

15   in part, on the number of shots fired and their trajectory, the underlying lawsuit proceeded to

16   trial. However, the Court dismissed the denial of access claim as premature because the

17   underlying lawsuit remained viable and was actively being litigated. (*Id*. at 9.) Nevertheless, the

18   Court affirmed that "a reasonable jury could conclude that relevant and material evidence was

19   destroyed." (*Id*. at 8.)

20          The jury was instructed on Nelson's § 1983 claims against the County for failure to train

21   Ditrich and against Ditrich individually for wrongful arrest and excessive force, as well as on the

22

23   _____

     [1] The motion for spoliation sanctions was denied with leave to amend. *See Nelson v. Thurston

24   County et al*., 3:18-cv-05184, Dkt. No. 98.

state law claims.  (Dkt. No. 26-12.)  The Court also issued an adverse inference jury instruction

on spoliation sanctions:

> The Plaintiff contends that the Defendant Thurston County did not take appropriate steps to preserve evidence in and on the police vehicle involved in the shooting at issue in this case and improperly destroyed such evidence. Defendant Thurston County denies this contention.
>
> Defendant Thurston County had a duty to preserve evidence that it knew, or reasonably should have known, could be relevant to a case. In this case, evidence which could have been relevant to the Plaintiffs claims and was in the possession of Defendant Thurston County is missing and/or was destroyed by Defendant Thurston County. **If you find that this evidence is missing or destroyed because of the defendants' bad faith or negligent, unjustified, or careless actions or inactions, you may infer that such evidence, if available in this proceeding, would have been favorable to the plaintiffs and adverse to Defendant Thurston County**.

(Dkt. No. 26-4 at 20) (emphasis added).  The alleged wrongful destruction of evidence came up

repeatedly throughout the trial.  For example, the plaintiff's opening statement emphasized that

"critical pieces of evidence" were missing, including photographs of the inside of the vehicle,

DNA evidence from the vehicle, or fingerprint evidence from inside the car.  (Dkt. No. 26-10 at

8.)  In closing, plaintiff's counsel drew the jury's attention to the spoliation instruction and

missing evidence and stated: "this, ladies and gentlemen, is spoliation of evidence. It is bad faith,

in my view, and at a minimum, it is negligent, unjustified and careless in the handling of a

homicide investigation."  (Dkt. No. 26-11 at 11.)

     The jury returned a verdict for the defendants, finding that Districh did not violate

Nelson's federal constitutional rights.  (Dkt. No. 26-12 at 3.)  The jury also found that Nelson

was committing a felony at the time he was injured such that Washington Revised Code

§ 14.24.420 precluded liability on his state law claims.  (*Id*. at 6.)  The Court entered final

judgement on July 10, 2023, and Nelson did not move for judgment notwithstanding the verdict

or for a new trial.  *See Nelson v. Thurston County et al*., 3:18-cv-05184.

1

**B.  The Instant Litigation**

2

Plaintiff filed the instant suit on July 9, 2024.  (Dkt. No. 1.)  Plaintiff asserts that

3

"Plaintiff was hampered significantly in presenting his case against Ditrich and Defendants

4

Thurston County and John Snaza in the Underlying Lawsuit by the concealment and destruction

5

of evidence perpetrated by Defendants."  (Dkt. No. 1 at 32.)  Accordingly, Plaintiff argues that

6

"[a]s a result of Defendants' failures to preserve evidence, and actions taken with the specific

7

intent to destroy relevant evidence, Plaintiff was denied meaningful access to the courts."  (*Id.* at

8

34.)  Plaintiff brings four claims: violation of Plaintiff's constitutional right to meaningful access

9

to the courts as protected under the First and Fourteenth Amendments of the U.S. Constitution;

10

conspiracy to violate Plaintiff's right to meaningful access to the courts; common law outrage;

11

and common law negligence.  (*Id*. at 34–37.)  On February 10, 2025, Defendants moved for

12

judgment on the pleadings.  (Dkt. No. 25.)

13

### III        LEGAL STANDARD

14

After the pleadings are closed, a party may move for judgment per Rule 12(c).  The

15

analysis under Rule 12(c) is "functionally identical" to the analysis under Rule 12(b)(6).

16

*Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989).  Thus, material

17

allegations are taken as admitted and the complaint is construed in the plaintiff's favor.  *Keniston*

18

*v. Roberts*, 717 F.2d 1295 (9th Cir. 1983).  "While a complaint . . . does not need detailed factual

19

allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires

20

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

21

will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007) (internal citations

22

omitted).  "Factual allegations must be enough to raise a right to relief above the speculative

23

level, on the assumption that all the allegations in the complaint are true (even if doubtful in

24

fact)." *Id*. at 555.  "The court need not, however, accept as true allegations that contradict

matters properly subject to judicial notice or by exhibit . . . .  Nor is the court required to accept as

true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *opinion amended

on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001).  Accordingly, "[j]udgment on the pleadings is

properly granted when, accepting all factual allegations in the complaint as true, there is no issue

of material fact in dispute, and the moving party is entitled to judgment as a matter of law."

*Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (brackets and internal quotation

marks omitted).

## IV    DISCUSSION

### A.  The Right of Access to the Courts

The Supreme Court has long held that the right of access to the courts is fundamental and

protected by the Constitution.  *Delew v. Wagner*, 143 F.3d 1219, 1222 (9th Cir. 1998) (citing

*Chambers v. Baltimore & Ohio R.R. Co*., 207 U.S. 142, 148 (1907)).  The basis for the right is

"unsettled," and the Supreme Court has identified Privileges and Immunities Clause of Article

IV, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the

Fourteenth Amendment Equal Protection and Due Process Clauses as potential sources.  *See

Christopher v. Harbury*, 536 U.S. 403, at 415 & n.12 (2002).  Courts have recognized two kinds

of right of access claims: forward-looking claims and backward-looking claims.  *Flagg v. City of

Detroit*, 715 F.3d 165, 173 (6th Cir. 2013) (citing *Christopher v. Harbury*, 536 U.S. 403, 413–

414 (2002)).  In a forward-looking claim, a plaintiff alleges that systematic official action created

a condition that prevented them from filing suit.  *Id*.  "The object of the suit is to eliminate the

condition, thereby allowing the plaintiff, usually an inmate, *see Pena v. Mattox*, 84 F.3d 894, 902

(7th Cir.1996), to sue on some underlying legal claim." *Id*.  In backward looking claims, "the government is accused of barring the courthouse door by concealing or destroying evidence so that the plaintiff is unable to ever obtain an adequate remedy on the underlying claim." *Id*. (citing *Christopher*, 536 U.S. at 413–414.)  Thus, "if a party engages in actions that effectively cover-up evidence and this action renders a plaintiff's state court remedy ineffective, they have violated his right of access to the courts." *Swekel v. City of River Rouge*, 119 F.3d 1259, 1262 (6th Cir. 1997); *Delew*, 143 F.3d at 1222–23 (9th Cir. 1998) (adopting and applying *Swekel's* analysis); *Hernandez v. Broin*, 583 F. App'x 679, 680 (9th Cir. 2014).

A right of access claim involves multiple components.  42 U.S.C. § 1983 allows for suit against a state actor who deprived a plaintiff of a federal right but creates no substantive rights in and of itself.  *Flagg,* 715 F.3d at 173.  Likewise, the right to access the courts does not create a cause of action; instead, "a denial-of-access plaintiff must have an arguable, nonfrivolous underlying cause of action" such as a wrongful death claim.  *Id*., *see also Christopher*, 536 U.S. at 415 ("the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court").  Accordingly, a backwards looking claim is comprised of four discrete elements: "(1) a non-frivolous underlying claim; (2) obstructive actions by state actors; (3) substantial prejudice to the underlying claim that cannot be remedied by the state court, and (4) a request for relief which the plaintiff would have sought on the underlying claim and is now otherwise unattainable." *Flagg,* 715 F.3d at 174 (cleaned up).

In order to prevail on the third element—substantial prejudice that cannot be remedied by the state court—a plaintiff must show that the defendant's actions "foreclosed [the plaintiff] from filing suit in state court or rendered ineffective any state court remedy [the plaintiff] previously may have had."  *Swekel,* 119 F.3d at 1263–1264; *see also Delew*, 143 F.3d at 1222–23 (9th Cir.

1  1998) (adopting *Swekel's* holding that a plaintiff must show that defendant's actions rendered

2  any available state court remedy ineffective)).  As the Seventh Circuit recently remarked, the

3  road to prevailing on such a claim "is an exceedingly narrow one."  *Harer v. Casey*, 962 F.3d

4  299, 307 (7th Cir. 2020).  There is no "constitutional right to have the police investigate [a] case

5  at all, still less to do so to [a plaintiff's] level of satisfaction;" thus, a plaintiff must show that

6  defendants utterly "prevented [the plaintiff] from exercising his right to seek legal redress."

7  *Rossi v. City of Chicago*, 790 F.3d 729, 735 (7th Cir. 2015).  The fact that a plaintiff's case

8  "likely would have been stronger" had the police acted differently is not sufficient to support a

9  right of access claim.  *Id*. at 736; *see also Chappell v. Rich*, 340 F.3d 1279, 1283–1284 (11th Cir.

10 2003) ("Although access to the concealed evidence might have strengthened their case, the

11 [plaintiffs] do not allege that they were or would have been prevented from filing a wrongful

12 death suit within the statute of limitations period, nor that the [d]efendants' actions would have

13 made such a suit inadequate, ineffective, or not meaningful.").  Indeed, "in most instances, state

14 courts can address pre-filing abuses by tolling the statute of limitations or allowing for a

15 'spoliation of evidence' lawsuit."  *Swekel,* 119 F.3d. at 1264; *see also Est. of Smith v. Marasco*,

16 318 F.3d 497, 511 (3d Cir. 2003).[2]

---

[2] "Notwithstanding the broad formulation of the principle that a state officer's cover-up may create constitutional liability, in practice the courts have been cautious in allowing liability to be imposed on that basis. Thus, a plaintiff typically cannot recover for any cover-ups or discovery abuses after an action has been filed inasmuch as the trial court can deal with such situations in the ongoing action. In fact, if alleged cover-ups in the course of litigation are regarded as actionable under section 1983 it is foreseeable that an initial civil rights action, or indeed any action against a state or local government or its officers, will be only the first in a series of such cases. Thus, only prefiling conduct that either prevents a plaintiff from filing suit or renders the plaintiff's access to the court ineffective or meaningless constitutes a constitutional violation." *Marasco,* 318 F.3d at 511.

1    However, in exceptional circumstances, courts have found that police cover ups violated

2   a plaintiff's access to the courts.  For example, in *Bell v. City of Milwaukee*, 746 F.2d 1205 (7th

3   Cir. 1984), police shot and killed Daniel Bell, planted a knife in his hand, and created a story that

4   Bell had threatened them.  Bell's family attempted to sue, but an internal investigation cleared

5   the officers of wrongdoing, which resulted in Bell's father settling for next to nothing and never

6   cashing the check he received.  Information about the fabrication did not surface until two

7   decades later, at which point the period of limitations had run and there was no possibility of

8   legal redress.  *Bell*, 746 F.2d at 1261. Accordingly, the Seventh Circuit found the plaintiff had a

9   viable denial of access claim.  *Bell*, 746 F.2d at 1261.  Two critical elements of the *Bell* fact-

10   pattern gave rise to the right of access violation: first, "the cover-up effectively foreclosed the

11   ability of Bell's father to learn the facts of his case and to seek relief for any injury," and second

12   "the period of limitations had run, and the possibility of timely legal redress had been

13   permanently thwarted by the cover-up."  *Rossi*, 790 F.3d at 763 (discussing *Bell*); *see also Bell*,

14   746 F.2d at 1261 ("This constitutional right is lost where, as here, police officials shield from the

15   public and the victim's family key facts which would form the basis of the family's claims for

16   redress.").

17    The Supreme Court echoed this reasoning in *Christopher*, assuming without deciding that

18   a backwards looking claim may be cognizable where an underlying claim has been tried and

19   settled for an inadequate amount due to "official deception" and is therefore barred by res

20   judicata, or where the statute of limitations has run.  *Christopher*, 536 U.S. at 422 n.22.[3]

21   Accordingly, the courts of appeals are in accord that a court analyzing a backwards looking

22

23   [3] The Supreme Court did not endorse the validity of backwards looking claims. Instead, it stated:
     "[s]uch cases have been decided in the Courts of Appeals; we assume without deciding the

24   correctness of the decisions." *Christopher*, 536 U.S. at 414 n.9 (citations omitted)).

1    claim must look to whether a plaintiff has access to sufficient facts to bring the underlying

2    lawsuit—even if the claim likely would have been stronger but for significant evidence

3    spoliation.  *Swekel,* 119 F.3d at 1263; *Rossi*, 790 F.3d at 763; *Chappell*, 340 F.3d at 1283–1284;

4    *Sousa v. Marquez*, 702 F.3d 124, 128 (2d Cir. 2012); *Pollard v. Pollard*, 325 F. App'x 270, 272

5    (4th Cir. 2009).  Additionally, even if a claim is prejudiced, the court must then look to whether

6    that prejudice is redressable by judicial remedy so as to cure the lack of access to the courts.

7    *Flagg,* 715 F.3d at 174; *Swekel,* 119 F.3d at 1263.

8            1.  <u>Denial of Access Claim</u>

9           Plaintiff asserts that, under *Delew*, he has "satisfactorily pled the required elements and

10   factual allegations to support a backwards-looking denial of access claim" because his

11   "underlying non-frivolous claims against Rodney Ditrich and Thurston County" survived

12   summary judgment and proceeded to trial.  (Dkt. No. 33 at 11.)  *See Delew v. Wagner*, 143 F.3d

13   1219, 1223 (9th Cir. 1998).  In this way, Plaintiff maintains that Defendants' destruction of

14   evidence "resulted in Plaintiff being deprived of meaningful access to the Courts to resolve [his]

15   non frivolous claims because the resulting loss of evidence deprived Plaintiff of a favorable

16   verdict in the Underlying Lawsuit."  (*Id*.)  Defendants respond that "as a matter of law the

17   remedy this Court afforded Plaintiff in the form of a spoliation jury instruction in the underlying

18   lawsuit provided him with his right of access to the courts and no constitutional violation

19   occurred."  (Dkt. No. 25 at 7.)  "Having received the jury instruction he requested and not sought

20   more severe spoliation remedies at trial, the Court should hold Plaintiff is now judicially

21   estopped from taking the contrary position that the instruction was insufficient to provide an

22   effective remedy," Defendants assert.  (*Id*. at 10.)

23

24

1    In *Delew*, the Ninth Circuit considered whether the coverup of facts surrounding an

2    individual's death could give rise to a cognizable claim for denial of access to the courts under

3    42 U.S.C. § 1983.  *Delew*, 143 F.3d at 1222–23.  The panel concluded that such claims are

4    cognizable—a matter upon which there remains a circuit split, as the Court in *Christopher*

5    merely "assume[d], without deciding, the correctness of the [courts of appeals] decisions"

6    recognizing a backward-looking right of access.  *Christopher*, 536 U.S. at 414 n. 9; *see, e.g.,*

7    *Jennings v. City of Stillwater*, 383 F.3d 1199 (10th Cir. 2004) ("This Circuit has not recognized a

8    constitutional cause of action based on denial of access to the courts under these

9    circumstances.").  The *Delew* panel did not, however, conduct an analysis of the claim itself, as

10   the plaintiff's wrongful death action remained pending.  *Delew*, 143 F.3d at 1223.  Accordingly,

11   the *Delew* court found that the district court should have recognized that such claims were *viable*

12   and dismissed the claim without prejudice, providing the plaintiff with an opportunity to re-file

13   the action "if in fact the defendants' alleged cover-up actually rendered all state court remedies

14   ineffective."  *Id.*  Indeed, *Delew* explicitly adopted the holding from *Swekel* that "[t]o prevail on

15   [a denial-of-access] claim, the [plaintiff] must demonstrate that the defendants' cover-up violated

16   their right of access to the courts by rendering 'any available state court remedy ineffective.'" *Id.*

17   at 1222–1223 (citing *Swekel,* 119 F.3d at 1264).  Accordingly, we must look beyond *Delew*—

18   which merely affirms that backwards looking claims are viable in this circuit—to determine the

19   dispositive question of whether the destruction of evidence in this instance irreparably prejudiced

20   Plaintiff such that he had no meaningful opportunity to prevail on the underlying excessive force

21   claim.

22       The Parties have not raised any precedent from the courts of appeals that directly

23   addresses the question of whether or when an adverse jury instruction may provide an adequate

24

judicial remedy that renders a future lack of access claim non-viable.  The Court is likewise

aware of none.  However, "[f]ederal [district] courts have consistently dismissed denial of access

claims when any injury or prejudice the plaintiff might have suffered can be redressed by

pursuing existing remedies," and an adverse instruction or sanctions for spoliation recurs

repeatedly as an example of such a remedy in district court orders.  *Van Buren v. Crawford

Cnty.*, No. 13-CV-14565, 2017 WL 3479546, *7 (E.D. Mich. Aug. 14, 2017); *see also Gagain v.

Scirpo*, No. 3:09-CV-00571 CSH, 2013 WL 6839466, *6 (D. Conn. Dec. 27, 2013); *Jenkins v.

Hutcheson*, No. 6:15-CV-50, 2015 WL 9480037, *4 n.3 (S.D. Ga. Dec. 29, 2015) ("the potential

availability of spoliation sanctions further demonstrates that Plaintiff's access to the courts has

not been thwarted"); *McCloud v. Prack*, 55 F. Supp. 3d 478, 483 (W.D.N.Y. 2014) ("Plaintiff

has not been prevented from seeking judicial relief . . . In addition, if this action were to go to

trial, plaintiff could seek an instruction permitting the jury to draw an inference adverse to

defendants").

        For example, in *Gagain v. Scirpo*, the plaintiff brought a backwards looking claim that

alleged the defendant had destroyed evidence and thereby prevented her from seeking redress in

court.  *Scirpo*, 2013 WL 6839466, at *6.  The court noted that, although the plaintiff did not have

access to copies of her arrest records, she did have sufficient information to file a false arrest

claim and attempt to obtain as much information as possible in discovery.  Even if the records

were permanently destroyed, the court reasoned, "[p]laintiff could have sought a court's adverse

instruction or sanctions for spoliation" in the underlying suit, which would serve as an adequate

judicial remedy.  *Id*. at 8.  Thus, the court concluded that because "Plaintiff was aware of these

facts and, moreover, did "have adequate access to a judicial remedy" [of adverse instruction or

sanctions for spoliation]," the plaintiff did not bring "a successful backward-looking right of access claim." *Id.*

In *Van Buren*, the plaintiff alleged that the defendants had spoliated audio evidence of a police shooting. *Van Buren*, 14565, 2017 WL 3479546, at *1. After evidentiary hearings, the court issued an order concluding that the defendants had spoliated evidence and sanctioned them, which formed the basis of an interlocutory appeal. *Id.* The plaintiff then sought leave of court to amend his complaint and add a denial of access to the courts claim. *Id.* The court considered the question of whether "[d]efendants' evidence spoliation has so substantially and irreparably prejudiced Plaintiff as to deny her a meaningful and effective opportunity to prevail on her excessive force claim." *Id.* at *8. The *Van Buren* court found that the plaintiff had suffered some degree of prejudice because of the spoliation. *Id.* at *8. However, the court concluded "[p]laintiff has not shown that the prejudice to her claim cannot be remedied by this Court or that she is 'unable to ever obtain an adequate remedy on the underlying claim.'" *Id.* at *9 (citing *Flagg*, 715 F.3d at 173). Echoing the holdings of the courts of appeals, the court emphasized that the government may engage in egregious or obstructive behavior that does not give rise to a denial of access claim. "Because much evidentiary misconduct can be remedied through traditional sanctions, not every instance of evidence destruction by government officials gives rise to an independent, constitutional claim," the court determined. *Id.*

The court then analyzed whether the sanction that had been applied—"the rebuttable presumption that the destroyed recordings would have favored [p]laintiff,"—was a suitable judicial remedy and concluded that it was:

> The evidence spoliation has thus prejudiced Plaintiff's case, but did not make success on the excessive force claim unattainable. Here, the Court has already sought to remedy the evidence spoliation by imposing a rebuttable presumption that the destroyed recordings would have favored Plaintiff. Plaintiff argues that the rebuttable presumption is

insufficient to allow her to receive effective redress, but has not adequately explained why that is so. Certainly, the jury might find for Defendants at trial, but the Plaintiff will still have received meaningful access to the court system. A denial of access claim is not cognizable where an alternative remedy is sufficient to ensure effective access. The sanction imposed here was adequate. As such, Plaintiff's proposed denial of access is futile and the motion to amend will be denied.

*Id*. at *9.

Plaintiffs seek to distinguish *Van Buren* by emphasizing that the spoliation instruction here was "limited to authorizing the jury to make an inference that the destroyed evidence was harmful to Thurston County, not that it was harmful to Ditrich." (Dkt. No. 33 at 13.) It is true that Plaintiffs' excessive force § 1983 claim was asserted against Ditrich individually, as there is no vicarious liability under § 1983. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). However, Defendants suggest that "[i]t would require a high degree of cognitive dissonance for the jury to draw negative inferences against only the County but not Ditrich" because the "positions [of Ditrich and the County] were entirely consistent and who were represented by the same counsel." (Dkt. No. 36 at 5 n.1.)

At the outset, the Court notes that Plaintiff had sufficient evidence to timely file and vigorously prosecute the underlying lawsuit. *Swekel,* 119 F.3d at 1263 (whether a plaintiff has sufficient facts to file suit is key element of determining whether a plaintiff has plead a cognizable denial of access claim); *Thompson v. Boggs*, 33 F.3d 847, 852–853 (7th Cir.1994), *cert. denied*, 514 U.S. 1063 (1995) (defendants' actions did not amount to violation of right to access courts because plaintiff had sufficient facts to promptly file suit); *Rossi*, 790 F.3d at 763 (same); *Chappell*, 340 F.3d at 1283–1284 (same); *Sousa*, 702 F.3d at 128 (same); *Christopher*, 536 U.S. at 422 n.22 (same). Additionally, Plaintiff *could have* sought different or additional sanctions for spoliation in the underlying lawsuit—including a mandatory rather than permissive presumption—but did not do so. *See Nelson v. Thurston County et al*., 3:18-cv-05184. And

after the Court ruled that the adverse inference instruction would apply only to Thurston County, Plaintiffs could have moved to bifurcate, but never did, the trial against the defendants to attempt to eliminate possible issues the jury may have faced in applying the adverse inference instruction only the Thurston County.  The fact that a spoliation sanction was requested and given illustrates that Plaintiff *did* have access to a judicial remedy; Plaintiff's current position that it was not a *sufficient* remedy does not give rise to a lack of access claim.  *Scirpo*, 2013 WL 6839466, *8; *Jenkins*, 2015 WL 9480037, at*4 n.3; *McCloud*, 55 F. Supp. 3d at 483; *Van Buren*, 2017 WL 3479546, at *8–*9.  In this way, although the allegations that law enforcement destroyed critical evidence suggest that Plaintiff's claim may have been prejudiced, Plaintiff has not shown that this Court could not "adequately address these problems." *Swekel*, 119 F.3d at 1263.  Indeed, the Court *did* attempt to address these problems by giving an adverse the jury instruction.

Moreover, the Court is not persuaded that Defendant's evidence spoliation so substantially and irreparably prejudiced Plaintiff as to deny him an effective opportunity to prevail on the excessive force claim.  To be clear—the Court finds such conduct utterly reprehensible and an insult to the core values that our law enforcement officers must uphold.  However, it is entirely unclear whether evidence from the unadulterated interior of Ditrich's vehicle would have favored Plaintiff's version of events.  It may, in fact, have supported Ditrich's testimony and vindicated the Defendants.  The point is that although the evidence spoliation *may* have prejudiced Plaintiff's claims at trial, it did *not* make success on the claims unattainable.  Ultimately, the Court cannot find that Plaintiff has plead a right to access claim, as Nelson was able to gather sufficient facts to timely file suit, vigorously litigate the underlying claim, and proceed to trial, *see Swekel,* 119 F.3d at 1263; *Thompson*, 33 F.3d at 852–853; *Rossi*, 790 F.3d at 763; *Chappell*, 340 F.3d at 1283–1284; *Sousa*, 702 F.3d at 128; *Christopher*, 536

U.S. at 422 n.22, *and* Plaintiff received a spoliation instruction as to one of the Defendants at

trial.  *Swekel*, 119 F.3d, at 1264 (courts may address abuses with spoliation sanctions), *Scirpo*,

2013 WL 6839466, at *8; *Jenkins*, 2015 WL 9480037, at *4 n.3; *McCloud* 55 F. Supp at 483;

*Van Buren*, 2017 WL 3479546, at *8–*9.

    Accordingly, Plaintiff's denial of access claim is DISMISSED.

    2.  <u>Conspiracy Claim</u>

    Plaintiff alleges that Defendants are liable under 42 U.S.C. § 1985 for conspiracy to

violate Plaintiff's right of access to the courts.  (Dkt. No. 1 at 35.)  To state a conspiracy claim

under § 1985, "a plaintiff must first have a cognizable claim under § 1983."  *Olsen v. Idaho State*

*Bd. Of Medicine*, 363 F.3d 916, 930 (9th Cir. 2004).  "[T]he absence of a section 1983

deprivation of rights precludes a section 1985 conspiracy claim predicated on the same

allegations." *Caldeira v. County of Kauai*, 866 F.2d 1175, 1182 (9th Cir. 1989).  Thus, Plaintiff's

conspiracy claims under fail as a matter of law for the same reasons that his right to access claim

under § 1983 fails (*see supra*).

    Plaintiff argues that the Complaint "should identify § 1983, rather than § 1985" as the

basis for the conspiracy claims and that there was a "typo" in the heading of the complaint.  (Dkt.

No. 33 at 17.)  "Plaintiff therefore requests that the Court permit Plaintiff to amend the complaint

to correct the typo in the heading to read '1983' instead of '1985.'" (*Id*. at 18.)  The Court

concludes that such amendment would be futile, however, as a § 1983 conspiracy claim also fails

as a matter of law.  To establish a conspiracy pursuant to § 1983, Plaintiff must show a meeting

of minds to violate his constitutional rights.  *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002).

Yet Plaintiff pleads no specific facts to show an agreement or meeting of the minds to violate

Plaintiff's constitutional right to access the courts.  *Woodrum v. Woodward Cnty., Okl*., 866 F.2d

1121, 1126 (9th Cir. 1989) ("agreement or meeting of minds to violate . . . constitutional rights

must be shown.)  (*See generally* Dkt. No. 1).  Moreover, to give rise to liability under § 1983, the

alleged conspiracy must result in an *actual deprivation* of a constitutional right.  *Woodrum,* 866

F.2d at 1126.  The Court concluded *supra* that Plaintiff has failed to state a claim for deprivation

of his constitutional right to access the courts.  Accordingly, Plaintiff fails to make out a claim

for conspiracy to deprive him of that constitutional right under § 1983.

Accordingly, the conspiracy claim is DISMISSED.

**B.  State Law Claims**

1.  Negligence

Defendants allege that Plaintiff's negligence claim fails as a matter of law and is barred

by res judicata.  (*See* Dkt. No. 25 at 22.)  Plaintiff asserts that the following conduct gives rise to

a viable negligence claim:

> Defendants tampered with or contaminated the evidence at the scene of the shooting, that
> Thurston County arranged for a sham investigation to be led by Lewis County personnel
> who reported to the brother of Thurston County's own Sheriff as part of a team that
> existed for the sole purpose of protecting officers from criminal and civil prosecutions
> whilst creating the appearance of an unbiased investigation, that Defendant John Snaza
> directed the investigation team and Thurston County personnel to release the vehicle
> from the investigation and to dispose of it, that Defendants Hirte, Klene, and Phillips
> contaminated the evidence in the vehicle, removed evidence from the vehicle, and
> arranged for the evidence to be destroyed all in accordance with the direction of
> Defendant John Snaza to get rid of the vehicle, and that Defendant Clark rubber-stamped
> an internal affairs investigation in which he cleared Ditrich of wrongdoing without
> conducting any investigation at all of any kind for the purpose of protecting Ditrich and
> the County from potential civil liability.

(Dkt. No. 33 at 24.)  However, there is no cause of action for negligent law enforcement

investigation under Washington law.  *M.W. v. Dep't of Soc. & Health Servs.*, 70 P.3d 954, 960

(Wash. 2003) ("Our courts have not recognized a general tort claim for negligent

investigation.").  As the Ninth Circuit has explained, a plaintiff's "claim for negligent

investigation by [the police] . . . is not cognizable under Washington law because it is not a

recognized tort and public officials are not liable for actions taken in furtherance of their duties

to the public as a whole." *Hood v. Cnty. of King*, 743 F. App'x 79, 83 (9th Cir. 2018).  The two

"narrow exceptions" to this rule do not apply to a claim alleging that law enforcement covered

up evidence.[4]  *Benjamin,* 2018 WL 4935448, at *12.  Thus, as Defendants state: "the actions

[Plaintiff] allege[s] – failure to preserve, destroying, or mishandling evidence; conducting a

"sham" investigation; and having supposedly unqualified staff lead the investigation – are all

investigative actions of law enforcement," which cannot form the basis of a cognizable

negligence claim in Washington.  (Dkt. No. 36 at 10.)

Plaintiff suggests that, under *Beltran-Serrano v. City of Tacoma*, 442 P.3d 608 (2019),

their negligence claim is viable.  In *Beltran*, the Supreme Court of Washington affirmed that the

common law duty of reasonable care to refrain from causing foreseeable harm in interactions

with others applies in the context of law enforcement—insofar as officers must refrain from

directly causing harm through affirmative acts of misfeasance.  *Beltran*, 442 P.3d at 615.  This

duty, however, encompasses "the officer's *direct contact* with the plaintiffs, not the performance

of a general public duty of policing."  *Id.* (emphasis added).  Accordingly, it does not extend to

claims premised on law enforcement's destruction or mishandling of evidence.  For this reason,

Plaintiff has failed to state a negligence claim.

---

[4] "There are two narrow exceptions this rule. The first is when a child's parents challenge an investigation done by the Department of Social and Health Services that results in a 'harmful placement decision' of the child in an abusive home, or fails to take a child out of an abusive home.  The second is in the employment context, where an employer guarantees an employee specific reasons for dismissal in an employment contract, and the employer fails to conduct an adequate investigation prior to termination."  *Benjamin v. Stevens Cnty.*, No. 2:18-CV-204-RMP, 2018 WL 4935448, *12 (E.D. Wash. Oct. 11, 2018) (internal citations omitted).

1    To the extent that Plaintiff's negligence claim *is* based on the duty identified in *Beltran*—

2    which goes to encounters between law enforcement and civilians—it is barred by res judicata.

3    *Mancini v. City of Tacoma*, 479 P.3d 656, 666 (2021). As the Supreme Court has described:

4       The preclusive effect of a judgment is defined by claim preclusion and issue preclusion,
        which are collectively referred to as 'res judicata.' Under the doctrine of claim

5       preclusion, a final judgment forecloses successive litigation of the very same claim,
        whether or not relitigation of the claim raises the same issues as the earlier suit. Issue

6       preclusion, in contrast, bars successive litigation of an issue of fact or law actually
        litigated and resolved in a valid court determination essential to the prior judgment, even

7       if the issue recurs in the context of a different claim. By precluding parties from
        contesting matters that they have had a full and fair opportunity to litigate, these two

8       doctrines protect against the expense and vexation attending multiple lawsuits, conserve
        judicial resources, and foster reliance on judicial action by minimizing the possibility of

9       inconsistent decisions.

10   *Taylor v. Sturgell*, 553 U.S. 880, 392 (2008) (cleaned up). Federal courts apply a multi-part test

11   to determine whether claims are barred by the doctrine of claim preclusion: "Res judicata applies

12   when 'the earlier suit . . . (1) involved the same 'claim' or cause of action as the later suit, (2)

13   reached a final judgment on the merits, and (3) involved identical parties or privies.'" *Mpoyo v.*

14   *Litton Electro-Optical Sys.*, 430 F.3d 985, 987 (9th Cir. 2005) (quoting *Sidhu v. Flecto Co.*, 279

15   F.3d 896, 900 (9th Cir. 2002). "Whether the two suits involve the same claim or cause of action

16   requires us to look at four criteria, which we do not apply mechanistically: (1) whether the two

17   suits arise out of the same transactional nucleus of facts; (2) whether rights or interests

18   established in the prior judgment would be destroyed or impaired by prosecution of the second

19   action; (3) whether the two suits involve infringement of the same right; and (4) whether

20   substantially the same evidence is presented in the two actions." *Id.* Under Washington law, the

21   claim preclusion test is very similar: for res judicata to apply, a prior judgment must have the

22   same subject matter, cause of action, persons and parties, and quality of the persons for or

23

24

against whom the claim is made.  *Yakima Cnty. v. Yakima Cnty. L. Enf't Officers Guild*, 237 P.3d 316, 327–28 (Wash. App. 2010).

Under either test, a negligence claim premised on the shooting or on the spoliation of evidence—which was known at the time of the underlying lawsuit—is clearly barred by res judicata.  First, the underlying suit resulted in a final judgment on the merits.  Second, the Parties are in privity; Plaintiff and Thurston County were parties in the underlying lawsuit and the County officials named as Defendants in this suit are in privity with the County, their employer. *Chunhye Kim Lee v. Arizona Bd. of Regents*, 633 F. App'x 453 (9th Cir. 2016) ("An employer-employee relationship satisfies the claim preclusion privity requirement.")  As detailed *supra* Section II, the two actions arise out of the same nucleus of facts and involve infringement of the same rights.  *Mpoyo*, 430 F.3d at 987.  Negligence claims for personal injury and wrongful death proceeded to trial in the previous action.  (*See* Dkt. No. 26-12 at 7.)  Claim preclusion "bars relitigation of all grounds of recovery that were asserted, or could have been asserted, in a previous action . . . It is immaterial whether the claims asserted subsequent to the judgment were actually pursued in the action that led to the judgment; rather, the relevant inquiry is whether they could have been brought."  *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 322 F.3d 1064, 1077–78 (9th Cir. 2003).  Accordingly, a negligence claim premised on the duty identified in *Beltran* is squarely precluded.

2.  Outrage

Under Washington law, "[t]he tort of outrage requires the proof of three elements: (1) extreme and outrageous conduct, (2) intentional or reckless infliction of emotional distress, and (3) actual result to plaintiff of severe emotional distress."  *Kloepfel v. Bokor*, 66 P.3d 630, 632 (Wash. 2003).  "The first element requires proof that the conduct was 'so outrageous in

1    character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be

2    regarded as atrocious, and utterly intolerable in a civilized community.'" *Robel v. Roundup*

3    *Corp.*, 59 P.3d 611, 619 (Wash. 2002) (quoting *Dicomes v. State*, 782 P.2d 1002 (Wash. 1989)).

4    Plaintiff asserts: "If a broad cover-up of an officer killing of civilians they are sworn to protect

5    through concealment, tampering, and destruction of evidence does not qualify as outrageous and

6    intolerable, it is difficult to conceive of what could." (Dkt. No. 33 at 4.)  Setting aside the

7    question of whether evidence destruction by law enforcement is sufficiently outrageous, it

8    appears apparent that this claim is barred by res judicata, insofar as Plaintiff could have brought

9    it in the underlying suit but did not.  *Tahoe-Sierra,* 322 F.3d at 1077–78.

10        The outrage claim is premised on Defendants' intentional destruction of evidence in an

11   effort to protect Ditrich; thus, the coverup is the allegedly "outrageous conduct" at issue.  (*See*

12   Dkt. No. 33 at 21–22.)  This conduct was known to Plaintiffs and, as discussed *supra* Section II,

13   came up repeatedly at trial in the underlying suit.  As Plaintiff's counsel stated in his closing

14   arguments, "this, ladies and gentlemen, is spoliation of evidence. It is bad faith, in my view, and

15   at a minimum, it is negligent, unjustified and careless in the handling of a homicide

16   investigation." (Dkt. No. 26-11 at 11.)  The Court does not disagree with Plaintiff's assertion

17   that police officers and departments engaging in cover ups to protect officers who have killed

18   civilians, if proven, is behavior worthy of the upmost opprobrium.  (*See* Dkt. No. 33 at 22.)

19   However, this tort—if the conduct is indeed tortious—occurred prior to the underlying lawsuit.

20   Likewise, the emotional distress caused by the destruction of evidence did not come to pass only

21   after the underlying lawsuit concluded.  (*See* Dkt. No. 26-11.)  As the Court found *supra*, the

22   parties are in privity and the two actions arise out of the same transactional nucleus of facts and

23   involve infringement of the same rights.  *Mpoyo*, 430 F.3d at 987.  Accordingly, this claim *could*

24

have been asserted in the previous action but was not.  It is barred by *res judicata*.  *Tahoe-Sierra*, 322 F.3d at 1077–78.

Accordingly, Plaintiff's state law claims are also DISMISSED.

<strong>V    CONCLUSION</strong>

For the reasons described herein, Defendants' motion for judgment on the pleadings (Dkt. No. 25) is GRANTED.  Plaintiff's claims are hereby DISMISSED.  Accordingly, the Parties' stipulated motion to continue trial (Dkt. No. 42) is DENIED as moot.

Dated this 12th day of June, 2025.

David G. Estudillo
United States District Judge